UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 3:10-PO-22 |
| ) | (SHIRLEY) |
| LISA M. REAGAN, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This case is before the undersigned pursuant to 28 U.S.C. § 636(a)(3) and -(4) for all further proceedings including entry of judgment and sentencing. This case is now before the Court on the Government's Motion to Reconsider [Doc. 15] filed on April 16, 2010. The Motion asks the Court to reconsider its oral ruling of April 14, 2010, granting the Defendant's Motion to Suppress Evidence Obtained from Illegal Search [Doc. 1] and suppressing four items found inside the passenger compartment of the Defendant's vehicle: a handgun, ammunition, a bottle cap, and a flask. The Court's April 14 ruling was delivered from the bench at the conclusion of a hearing on the Defendant's Motion to Suppress. Assistant United States Attorney J. Edgar Schmutzer and law students Alex Reed-Krase and Katie Atkins were present at the hearing on behalf of the Government. Attorney Bryan Delius was present on behalf of the Defendant, who was also present.

On April 20, 2010, the parties appeared again for a hearing on the Government's Motion to Reconsider. The Court denied the Motion in an oral ruling delivered from the bench. That ruling

is memorialized herein.

## I. FACTS

Based on the testimony and evidence presented at the suppression hearing on April 14, 2010, the Court makes the following findings of fact. On October 17, 2009, at a few minutes past 9:00 p.m., National Park Ranger Michael Garner arrived at a pull-out area on the shoulder of Lyon Springs Road near the Metcalf Bottoms Picnic Area in the Great Smoky Mountains National Park. Ranger Garner was responding to a call for backup placed by another park ranger, Ranger Ellen Paxton. When Ranger Garner arrived at the pull-out area, he observed that Ranger Paxton was administering a field sobriety test ("FST") of the Defendant. The Defendant's vehicle, a Porsche Boxster, was "high centered" in the pull-out area; i.e., it was positioned with both of its rear wheels hanging off of the pavement, and its chassis was resting on the pavement lip. Ranger Garner stood by for approximately twenty minutes as Ranger Paxton completed her administration of a battery of FSTs of the Defendant.

Ranger Paxton determined that the Defendant failed the FSTs, and she subsequently placed the Defendant under arrest for driving under the influence of alcohol ("DUI"), a violation of 36 C.F.R. § 4.23(a)(1). After Ranger Paxton effected the arrest and secured the Defendant in the back of her patrol car, she instructed Ranger Garner to search the passenger compartment of the Defendant's vehicle. Ranger Garner searched the passenger compartment of the vehicle, and he discovered a flask in the driver's side door storage area, a beer bottle cap in the driver's seat, and a handgun and four rounds of ammunition in a zippered case beneath the driver's seat. Ranger Garner also found several of the Defendant's personal effects, including an iPod, an EpiPen, a

camera, and a purse. Ranger Garner testified that he was searching "specifically for alcohol."

While Ranger Garner was conducting his search, the Defendant's husband, Mr. Beville Reagan, arrived at the scene. Ranger Paxton allowed Mr. Reagan to speak to the Defendant. After this brief conversation, Ranger Garner released the Defendant's personal effects to Mr. Reagan. Shortly thereafter, Ranger Paxton, Ranger Garner, and the Defendant all left the scene in Ranger Paxton's patrol car. Ranger Garner left his patrol car at the scene. He left the keys to the Defendant's vehicle locked inside of his patrol car. When the Rangers departed with the Defendant, Mr. Reagan was left alone at the scene with the Defendant's vehicle.

## II.     ANALYSIS

The Fourth Amendment protects citizens against unreasonable searches or seizures. U.S. Const. amend IV. The basic rule for determining whether a search is reasonable is that "'searches conducted outside the judicial process, without prior approval by a judge or magistrate, are *per se* unreasonable under the Fourth Amendment–subject only to a few specifically established and well-delineated exceptions.'" Arizona v. Gant, 556 U.S. __, 129 S. Ct. 1710, 1716 (April 21, 2009) (quoting Katz v. United States, 389 U.S. 347 (1967)). One such exception is implicated in this case: the search incident to arrest exception. See Gant, 129 S. Ct. at 1716-21 (containing a discussion of the history of the search incident to arrest exception); see also Weeks v. United States, 232 U.S. 383, 392 (1914) (stating that the right of the Government to search the person of an accused when he is legally arrested was "always recognized under English and American law" and had been "uniformly maintained in many cases"). At the hearings on the Motion to Suppress [Doc. 1] and the Motion to Reconsider [Doc. 15], the Government argued that Ranger Garner's warrantless search of the

passenger compartment of the Defendant's vehicle after she was arrested was lawful because it fit within the recognized search incident to arrest exception to the warrant requirement.

In Gant, the Supreme Court held that "police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search *or it is reasonable to believe the vehicle contains evidence of the offense of the arrest.*" 129 S. Ct. at 1711 (emphasis added). In this case, it is uncontested that Ranger Garner's search occurred after the Defendant was arrested and secured in the back of a patrol car. Accordingly, the Court finds that the Defendant was not within reaching distance of the passenger compartment of her vehicle at the time of Ranger Garner's search. Thus, the only issue for the Court's resolution is whether it was reasonable for Ranger Garner to believe that the Defendant's vehicle contained evidence of the offense for which she was arrested, DUI.

The Supreme Court has not expressly clarified the meaning of the phrase "reasonable to believe" as it is used in Gant, nor has it expounded on when it is reasonable for a law enforcement officer to believe that the passenger compartment of a vehicle contains evidence of the crime for which the vehicle's occupant was arrested. In Gant, the Court simply stated the following:

> In many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence. See, e.g., Atwater v. Lago Vista, 532 U.S. 318, 324 (2001); Knowles v. Iowa, 525 U.S. 113, 118 (1998). But in others, including Belton and Thornton, the offense of arrest will supply a basis for searching the passenger compartment of the arrestee's vehicle and any containers therein.[1]

129 S. Ct. at 1719.

---

[1] In both New York v. Belton, 453 U.S. 454 (1981), and Thornton v. United States, 541 U.S. 615 (2004), the offense of arrest was possession of a controlled substance.

The Supreme Court's reticence has led to confusion among the lower federal courts and various state courts. At least one court has stated that the "'reasonable to believe' standard referred to in Gant equates with a probable cause standard, that being probable cause to believe evidence of the crime of arrest will be located in the vehicle." United States v. Grote, 629 F. Supp. 2d 1201, 1203 (E.D. Wash. 2009) (relying upon United States v. Gorman, 314 F.3d 1105, 1111 (9th Cir. 2002) ("'the reason to believe,' or reasonable belief standard . . . embodies the same standard of reasonableness inherent in probable cause")). By contrast, at least one other court has expressly held that Gant's "reasonable to believe" standard does *not* equate to the probable cause standard. Idaho v. Cantrell, 2010 WL 919314, at *6 (Idaho App. March 16, 2010) ("The United States Supreme Court is certainly aware of the meaning attached to particular standards. Had the Court intended to adopt the probable cause standard, it would have done so . . . Thus, it is clear that the Court viewed the probable cause [standard] as distinct from the 'reasonable to believe' standard.").

The Court of Appeals for the Sixth Circuit has not expressly decided what is meant by the phrase "reasonable to believe" in Gant. But it has stated that a "reasonable belief standard" is "lesser" than a probable cause standard. United States v. Pruitt, 458 F.3d 477, 482 (6th Cir. 2006). And it has explained that "[r]easonable belief is established by looking at common sense factors and evaluating the totality of the circumstances." Id.

This Court is unable to perceive any meaningful difference between the phrases "reasonable belief" and "reasonable to believe." Therefore, the Court finds that the Court of Appeals for the Sixth Circuit is likely to construe Gant's "reasonable to believe" standard, 129 S. Ct. at 1711, as the functional equivalent of Pruitt's "reasonable belief standard," 458 F.3d at 482. Accordingly, the Court interprets the rule of Gant to be that incident to the lawful arrest of the occupant of a vehicle,

law enforcement officers may search the passenger compartment of that vehicle and any containers therein without a warrant when "the arrestee is within reaching distance of the passenger compartment at the time of the search," 129 S. Ct. at 1711, or when it is reasonable to believe, based upon common sense factors and the totality of the circumstances, that evidence of the offense of the arrest is inside.[2]

The Court's interpretation of Gant is admittedly contrary to that of several other recent judicial decisions from around the country. Those decisions interpret the rule of Gant to be that incident to the lawful arrest of the occupant of a vehicle, law enforcement officers may search the passenger compartment of that vehicle and any containers therein without a warrant when "the arrestee is within reaching distance of the passenger compartment at the time of the search," 129 S.

---

[2] The Court's interpretation is in line with the position taken by the District Court for the Eastern District of Washington in Grote. Although the Grote court held that Gant's "reasonable to believe" standard equates to the familiar probable cause standard (a holding at odds with controlling Sixth Circuit case law), it also indicated that the analysis of whether it is reasonable to believe that evidence is located inside the passenger compartment of a vehicle is case-specific, and not controlled by any *per se* rules:

> This court, however, is hesitant to construe Gant as standing for the proposition that a traffic violation, and a DUI in particular, can never serve as the basis for a search of a vehicle incident to a lawful arrest on the assumption that it will never be reasonable to believe that evidence of DUI will be found in the vehicle. This court is equally hesitant to hold that a lawful arrest for DUI will always justify a search of a vehicle incident to arrest on the assumption that it will always be reasonable to believe that evidence of DUI will be found in the vehicle.

Grote, 629 F. Supp. 2d at 1204.

As further explained *infra*, this Court agrees with the District Court for the Eastern District of Washington that Gant does not create a *per se* rule that a search of a vehicle passenger compartment incident to arrest is always permissible when the offense of arrest is of one type, and never permissible when the offense of arrest is of another type.

Ct. at 1711, or when the offense of arrest is, by its very nature, an offense that might yield physical evidence. See Brown v. Florida, 24 So. 3d 671, 679 (Fla. Dist. Ct. App. 2009) ("we hold that 'reasonable belief,' as used in Gant, is solely determined from the nature of the offense of arrest"); see also Cantrell, 2010 WL 919314, at *6-7 (relying upon Brown and holding that a search incident to a DUI arrest was lawful under Gant "because the offense of the arrest [, DUI, ] will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein, and because a DUI is an offense for which police could expect to find evidence in the passenger compartment"); Cain v. Arkansas, 2010 WL 129713, at *4 (Ark. Ct. App. Jan. 13, 2010) (reasoning that a search incident to a DUI arrest was lawful under Gant because "an open container could have been found in appellant's vehicle"); Cain, 2010 WL 129713, at *5 (Brown, J., dissenting) ("the majority sends the message" that officers can search a vehicle incident to a lawful arrest for DUI "without anything more prompting such a search"); United States v. Oliva, 2009 WL 1918458, at *6 (S.D. Tex. 2009) (differentiating between a case where a defendant is arrested for a "routine traffic violation" and a case where a defendant is arrested for driving while intoxicated, and holding that in the latter case "it would be reasonable for officers to search the vehicle for evidence of driving while intoxicated, including open or empty containers").

This competing interpretation of Gant was best explained by the Florida District Court of Appeals in Brown v. Florida, 24 So. 3d 671 (Fla. Dist. Ct. App. 2009). In Brown, the court stated as follows:

> We conclude . . . that the "reasonable belief that evidence might be found" prong of Gant can be satisfied solely from the inference that might be drawn from the offense of arrest itself, and the assumption that evidence might be found at the place of arrest . . .
>
> It is clear . . . that the "nature of the charge" is determinative of

> whether there exists a reasonable basis to search for evidence, not whether there is some independent evidence that gives rise to a belief that the particular vehicle contains evidence. As Justice Scalia observed [in Thornton, 541 U.S. at 632 (Scalia, J., concurring)]: "[I]t is not illogical to assume that evidence of a crime is most likely to be found where the suspect was apprehended." Where, as here, the offense of arrest is such that police could "expect to find" fruits and instruments of the crime, the search is justified as an incident to the arrest because it is reasonable to believe that evidence might be found
> . . .
>
> [W]e hold that "reasonable belief," as used in Gant, is solely determined from the "nature of the offense of arrest[.]"

24 So. 3d at 678-79 (internal citations omitted).

At the end of its decision, the court articulated its holding more specifically:

> In conclusion, we hold that when the offense of arrest of an occupant of a vehicle is, *by its nature, for a crime that might yield physical evidence*, then as an incident to that arrest, police may search the passenger compartment of the vehicle, including containers, to gather evidence . . . If the offense of arrest is for a crime *for which there is no physical evidence*, then the search of the vehicle is not authorized as an incident to arrest, unless the arrestee has access to the passenger compartment of the vehicle at the time of the search[.]

Id. at 681-82 (emphasis added).

It is clear that the Brown court envisioned a dichotomy of criminal offenses. On one side are criminal offenses "for which there is no physical evidence." Id. at 681. And on the other side are criminal offenses that "by [their] nature . . . might yield physical evidence." Id.[3] The notion that crimes can be categorized in this manner comes from the Brown court's understanding of two passages from Gant–passages which themselves were modeled on Justice Scalia's concurring

---

[3] The Brown court understood that because most criminal offenses *might* yield physical evidence, its holding means that police can almost always search the passenger compartment of a vehicle without a warrant as an incident to an arrest of the vehicle's occupant. See id. at 679 ("We think Gant is simply a fine-tuning of Belton, not a complete overhaul.").

opinion in Thornton. Id. at 678 ("Our conclusion on this issue finds ample support in the concurring opinion of Justice Scalia in Thornton.").

In Gant, the Supreme Court stated the following:

> In many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence. See, e.g., Atwater v. Lago Vista, 532 U.S. 318, 324 (2001); Knowles v. Iowa, 525 U.S. 113, 118 (1998). But in others, including Belton and Thornton, the offense of arrest will supply a basis for searching the passenger compartment of the arrestee's vehicle and any containers therein.

129 S. Ct. at 1719.[4]

The Court then held that the search at issue in Gant was not a lawful search incident to arrest because "[the defendant] was arrested for driving with a suspended license–an offense for which police could not expect to find evidence in the passenger compartment of Gant's car." Id. at 1713.

---

[4] This passage from Gant was an express adoption of part of Justice Scalia's concurring opinion in Thornton. In that opinion, Justice Scalia wrote as follows:

> A motorist may be arrested for a wide variety of offenses; in many cases, there is no reasonable basis to believe relevant evidence might be found in the car. See, Atwater v. Lago Vista, 532 U.S. 318, 324 (2001); cf. Knowles v. Iowa, 525 U.S. 113, 118 (1998). I would therefore limit Belton searches [–i.e., searches of the passenger compartment of a vehicle incident to the driver's arrest–] to cases where it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.
>
> In this case, as in Belton, petitioner was lawfully arrested for a drug offense. It was reasonable for Officer Nichols to believe that further contraband or similar evidence relevant to the crime for which he had been arrested might be found in the vehicle from which he had just alighted and which was still within his vicinity at the time of arrest. I would affirm the decision below on that ground.

Thornton, 541 U.S. at 632 (Scalia, J., concurring).

Based on these two passages from Gant, the Brown court reasoned that the Supreme Court intended to give its imprimatur to a system of classifying criminal offenses into two distinct groups: those that "by [their] nature . . . might yield physical evidence," Brown, 24 So.3d at 678, and those "for which there is no physical evidence," id. at 681-82. Gant provided the Brown court with one example of an offense in the former group, and six specific examples of offenses in the latter group.

In Gant, the Supreme Court stated that the offenses of arrest in Belton and Thornton "will supply a basis for searching the passenger compartment of the arrestee's vehicle and any containers therein." 129 S. Ct. at 1719. In Belton, the offense of arrest was unlawful possession of marijuana. 453 U.S. at 456. In Thornton, the offense of arrest was unlawful possession of marijuana and crack cocaine. 541 U.S. at 618. Accordingly, the Brown court reasoned that the Supreme Court meant to classify unlawful possession of a controlled substance as a criminal offense that "by [its] nature . . . might yield physical evidence," Brown, 24 So.3d at 681. The Brown court then went on to expressly find that theft is also a criminal offense that by its nature might yield physical evidence. Id. at 677.

On the other side of the criminal offense dichotomy, Gant specified six criminal offenses "for which there is no physical evidence," id. at 681. In Gant, the Supreme Court stated that "[i]n many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence." 129 S. Ct. at 1719. In support of this statement, the Supreme Court cited Atwater, 532 U.S. 318, and Knowles, 525 U.S. 113. In Atwater, the offenses of arrest were "driving without [a] seatbelt fastened, failing to secure [passenger] children in seatbelts, driving without a license, and failing to provide proof of insurance." 532 U.S. at 324. In Knowles, a police officer conducted a full search of a vehicle incident to the citation of the

vehicle's driver for speeding.[5] 525 U.S. at 113. In Gant itself, the offense of arrest was driving with a suspended license, which was unequivocally held to be "an offense for which police could not expect to find evidence in the passenger compartment." 129 S. Ct. at 1713. Accordingly, the Brown court reasoned that the Supreme Court meant to classify minor traffic violations–specifically (1) driving without a seatbelt fastened, (2) failing to secure passenger children in seatbelts, (3) driving without a license,(4) failing to provide proof of insurance, (5) speeding, and (6) driving with a suspended license–as criminal offenses "for which there is no physical evidence," Brown, 24 So.3d at 681-82.

The Brown court relied on the examples above to re-state the rule of Gant: incident to the lawful arrest of the occupant of a vehicle, law enforcement officers may search the passenger compartment of that vehicle and any containers therein without a warrant when "the arrestee is within reaching distance of the passenger compartment at the time of the search," 129 S. Ct. at 1711, or when the offense of arrest is, by its very nature, an offense that might yield physical evidence.

This Court disagrees with the Brown interpretation of Gant for three reasons. First, any attempt to categorize every criminal offense as being either one that might yield physical evidence or one for which there is no physical evidence runs into interpretive problems. It is relatively easy to decide that certain criminal offenses, like the six minor traffic violations from Atwater, Knowles, and Gant, are offenses for which there is no physical evidence. But it is more difficult to decide whether a criminal offense such as telephone harassment "by [its] nature . . . might yield physical evidence," Brown, 24 So.3d at 681. Reasonable people could disagree about exactly what can be

---

[5] The Supreme Court held that this "search incident to citation" violated the Fourth Amendment, even though the police officer could have lawfully arrested the driver under Iowa law. Knowles, 525 U.S. at 114.

considered "physical evidence," and about whether there "might" be any physical evidence of telephone harassment.

Second, even if it were possible to simply classify criminal offenses using the <u>Brown</u> dichotomy, the only method for determining which offenses fit in each class would be a series of decisions rendered by various courts throughout the country. This piecemeal approach to classifying offenses could lead to jurisprudential inconsistencies. For example, a court in one state may determine that a certain crime *per se* might yield physical evidence, while a court in another state may decide that the very same crime is, *per se*, a crime for which there is no physical evidence. Moreover, because there are myriad criminal offenses, such piecemeal classification could create uncertainty among law enforcement officers. Further complicating this problem is the fact that many common criminal offenses have different elements or are defined with different terminology across different jurisdictions.

The third, and most significant, problem with the rule of <u>Brown</u> is that its application to a particular case might produce unreasonable or unintended results. <u>Brown</u> held that incident to the lawful arrest of the occupant of a vehicle, law enforcement officers may search the passenger compartment of that vehicle and any containers therein when the offense of arrest is, by its very nature, an offense that might yield physical evidence. This rule could actually allow police to search a vehicle passenger compartment incident to an arrest when it is wholly unreasonable to believe that evidence of the offense of arrest is inside, but the nature of the offense *per se* makes a search permissible.

For example, it is not too far-fetched to imagine a situation where a police officer observes a patron drink several beers in an establishment in a short period of time. If the police officer then

observes the patron leave the establishment, get into a vehicle in the parking lot, and drive off, the officer has probable cause to pursue the vehicle, effect a traffic stop, and arrest the driver for DUI. Under the rule of Brown, whether the officer may lawfully search the passenger compartment of the vehicle without a warrant incident to that DUI arrest depends entirely on whether DUI is, by its very nature, a criminal offense that might yield physical evidence. See Brown, 24 So.3d at 678 ("It is clear . . . that the "nature of the charge" is determinative of whether there exists a reasonable basis to search for evidence, not whether there is some independent evidence that gives rise to a belief that the particular vehicle contains evidence.").

At least three courts have indicated that DUI is an offense that, by its very nature, might yield physical evidence.[6] Assuming these courts are correct, the officer above could lawfully search the passenger compartment of the vehicle without a warrant even though he has absolutely no reason to believe that evidence of DUI is inside–to the contrary, his firsthand observation of the driver drinking several beers gives him a good reason to believe that no evidence of DUI is contained in the vehicle. This result seems completely contrary to Gant's statement that a warrantless search of a vehicle's passenger compartment incident to arrest is lawful when "it is reasonable to believe the vehicle contains evidence of the offense of the arrest." 129 S. Ct. at 1711. The Court therefore

---

[6] See Cantrell, 2010 WL 919314, at *6-7 (relying upon Brown and holding that a search incident to a DUI arrest was lawful under Gant "because the offense of the arrest [, DUI, ] will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein, and because a DUI is an offense for which police could expect to find evidence in the passenger compartment"); Cain, 2010 WL 129713, at *4 (reasoning that a search incident to a DUI arrest was lawful under Gant because "an open container could have been found in appellant's vehicle"); Oliva, 2009 WL 1918458, at *6 (differentiating between a case where a defendant is arrested for a "routine traffic violation" and a case where a defendant is arrested for driving while intoxicated, and holding that in the latter case "it would be reasonable for officers to search the vehicle for evidence of driving while intoxicated, including open or empty containers").

rejects Brown's interpretation of Gant.

Turning finally to the instant case, the Court finds that the Government failed to show that it was reasonable for Ranger Garner to believe that evidence of DUI was inside of the Defendant's vehicle. As stated *supra*, the Court interprets the rule of Gant to be that incident to the lawful arrest of the occupant of a vehicle, law enforcement officers may search the passenger compartment of that vehicle and any containers therein without a warrant when "the arrestee is within reaching distance of the passenger compartment at the time of the search," 129 S. Ct. at 1711, or when it is reasonable to believe, based upon common sense factors and the totality of the circumstances, that evidence of the offense of the arrest is inside. The Court finds that it is not reasonable to believe that evidence of DUI is inside the passenger compartment of a vehicle based solely upon the nature of the charge or the existence of evidence that the vehicle's driver is intoxicated. Thus, incident to the lawful arrest for DUI of the driver of a vehicle, police may search the passenger compartment of that vehicle and any containers therein without a warrant when the driver is within reaching distance of the passenger compartment at the time of the search, or when there is a particularized and articulable reason to believe that evidence of DUI is contained inside.[7]

In this case, Ranger Garner did not articulate any particularized reason why he believed that the Defendant's vehicle contained evidence of DUI. When asked why he searched the vehicle, Ranger Garner had two answers. First, he testified that he was instructed to search the vehicle by

---

[7] Many different facts may provide a law enforcement officer with reason to believe that evidence of DUI is located inside the passenger compartment of a vehicle. Examples include observations of the driver drinking while driving, observations of an open container of alcohol in plain view inside the passenger compartment, statements made by the occupants of the vehicle indicating that an open container is in the passenger compartment, the smell of alcohol emanating from within the passenger compartment, or indications that the driver was traveling from a location such as a recreational area or campground where alcohol is not available unless it is transported in by private vehicle.

Ranger Paxton. Second, he testified that in his prior experience, he had sometimes discovered open containers of alcohol when searching some vehicles following the arrest of their drivers for DUI. Neither of these reasons is particularized to the Defendant or the circumstances of this case. The Court acknowledges that a law enforcement officer's general prior experience is certainly one of the common sense factors to consider when deciding the reasonableness of his belief that evidence of a specific crime is located inside of a vehicle's passenger compartment. But in this case, the Court finds that Ranger Garner's general prior experience alone was not enough to establish a reasonable belief that evidence of DUI was contained within the Defendant's vehicle.

Accordingly, Ranger Garner's warrantless search of the Defendant's vehicle was not a lawful search incident to arrest, and its fruits must be suppressed.

### III. CONCLUSION

For the foregoing reasons, the Government's Motion to Reconsider **[Doc. 15]** was **DENIED** in an oral ruling on April 20, 2010.

                              ENTER:


                               s/ C. Clifford Shirley, Jr.
                              United States Magistrate Judge